The next case is Vellali et al. v. Yale University et al. Vellali et al. v. Yale University et al.     Vellali et al. v. Yale University et al. Vellali et al. v. Yale University et al. If the district court had instructed the jury that you have to conclude that a prudent fiduciary would have made the same decision or would have made some particular alternative decision, wouldn't that be misstating what ERISA requires? Isn't it more accurate to say that this decision has to fall outside the range of decisions that a prudent fiduciary could make? Well, the question in deciding whether the imprudent conduct caused a loss is what would have occurred had there been a prudent investigation, a prudent negotiation in this instance over the fees. But you agree that if there had been a prudent process and a prudent negotiation over the fees, they could have arrived at a range of outcomes, right? They could have. But I think in that instance, you're still talking about what would have occurred if there had been a prudent investigation. I thought your argument was different, though. I thought your argument was that in considering whether they were prudent or not, whether there was a breach, you could consider the fact that there are many options available that might be reasonable. But once a jury finds breach, then the burden shifts to the defendant to prove that the decision would have been the same. Am I misunderstanding what the argument is that as to whether there's a breach, you do consider the fact that there's a range of reasonable options that might be fine? Well, I don't think that's the argument quite. In considering whether there's a breach, it's whether the defendant's conduct reflected due care, diligence in the negotiation. And in that analysis, a jury can consider that there might be a bunch of reasonable options, not just one, right? Well, I think the defendant would have to show that if it had conducted an investigation, it would have concluded that there may have been several reasonable outcomes. But it's still showing what the product of a prudent investigation would have yielded in that instance. So just saying that this is a possibility, it doesn't— So just to be more particular, so if the defendant comes forward and says, okay, you found that there's—assuming you find that there's a breach, it's our burden to show that it didn't cause a loss. And if they say, look, admittedly, if there was a more prudent process, we could have arrived at a range of outcomes. Maybe it's possible that we wouldn't have made the same decision. But we quite possibly would have made the same decision because the actual decision is within that range or squarely within that range. I mean, they can't really say more than that, right? Because there's no way to say that a prudent process would arrive at a particular decision. Well, I think, at least in the case of a fee claim, that a prudent process would have arrived in a certain place because you would have tried to negotiate the fees. You would have gone to the market and seen what the fee rates were and then negotiated with the record keeper to try to obtain a reduction. Yeah, but even if you negotiate with them, even if you follow a completely prudent process, you might agree to different fees. Like just as a simple example, you might bargain between more services for more fees and fewer services for less fees, right? And both of those things would be prudent. Both of those things would be prudent, but for the particular batch of services that were at issue here, it was shown and the jury found that there was a loss due to unreasonable fees for the services that were provided. Well, the jury said there wasn't a prudent process, but there wasn't a loss, right? The jury found that there was a loss. Of zero dollars. And then wrote in zero on the amount, which we contend is a result of the could-have instruction rather than the would-have instruction. So on that question of loss though, the determination of loss and damages, technically the damages burden is on the defendant, but how do you see the split between the fact of the jury determining that there is a loss and concluding that loss is zero, and the harm from having this instruction, what you say is the incorrect instruction of would-have? Are these separate steps? Well, that's where there's an inconsistency between saying that there is a loss and that the loss is zero, because finding a loss means there has to be something more than zero. And so the explanation for how they wrote in zero anyway is that they were influenced by the possibility, the could-have possibility that was given in the instruction in Part 2. Well, the instruction about could-have in Part 2 is about damages, right? Right. It's not really about whether there's a loss. It's not about whether there's a loss, but it's about the amount of the losses. And then there are two lines on the verdict form for one was the amount of loss and one was damages. I mean, so right. So the verdict form says was there a breach, did the plaintiff show that there was a loss, and have the defendants shown that that loss would have, you know, you would have gotten the same decision with a prudent process, right? It was like a three-step thing. So if the jury had concluded that there wasn't a prudent process, but actually the plaintiffs hadn't shown that there was a loss associated with that breach, wouldn't it make sense for them to say there's a breach but they haven't shown damages? Maybe you're saying they then shouldn't have arrived at the third step, but I don't know. If you're a jury and you have it in front of you to fill out, maybe you fill it out anyway. I think then if there had been no loss shown, then they'd check the no box instead of the yes box. For what? For did the breach result in a loss? Have the plaintiffs proven a loss by a fine? Oh, right. So they should have just said that they haven't proven a loss. It's supposed to say that there's a loss of $0. Right. So they said there's a loss, and then they write 0. They cannot find a breach unless they determine that there is a loss, in other words, under the instruction. I don't think that's correct because they did find a breach. Right. And in finding a breach, they had to have found there was a loss because that's what they were instructed, that loss is an element of breach. Right? They were instructed that, yes.  Well, they were instructed that only in the damages part, right? The right answer and the overall impression of the instructions, and I think you agree with this, is that you can have a breach without a loss. Right? If you don't follow a prudent process but actually you end up picking a – making a decision that is a prudent decision, you'd have a breach without a loss. That's right. Agreed. So the error – your position is that the error was that comment the district court made that suggested you wouldn't have a breach when there's no loss. But the framework of the jury form that says you could have a breach that doesn't result in a loss, that was correct. Until you get to the part that says there's no loss if a prudent fiduciary couldn't – Right. So that's step three about what they had to show. I get that. Agreed. Can I ask about the claims that are dismissed on summary judgments? The interested transactions, other prohibited transactions claims? Yes. So your complaint says as part of your allegations of breach of fiduciary duties, count three is breach of fiduciary duties because Yale paid unreasonable administrative fees. And count five is breach of fiduciary duties because Yale paid unreasonable investment management fees and the other kinds of fees and so on. So the interested transactions statute says there's this exception if you pay a reasonable fee for administrative services. And you got a trial on counts three and five. So when the jury said a prudent fiduciary could have paid the same recordkeeping fees and we don't think there was a breach of fiduciary duties with respect to the other fees based on your argument that they were unreasonable, hasn't the jury already decided that the fees were reasonable? Like is there a – Certainly on the – Given that conclusion of the – if we accept that conclusion of the jury, how could a future jury make a different decision on the unreasonableness of the fees? Well, on the recordkeeping claim, the breach was found to be paying – allowing unreasonable recordkeeping and administrative fees to be charged to participants. So that tells us that the jury has found the defendants have not satisfied their burden of showing reasonable fees on the recordkeeping. The only – the only finding in defendants' favor on that point is the instruction that it could have resulted in the same decision. But there's still the finding by the jury that unreasonable fees were allowed to be charged. So that – the 1106 claim is valid. Well, so they say that there's a breach of the duty of prudence, which means that they've decided that there wasn't a prudent process leading to it, right? Well, presumably this incorporates a process, but the breach itself was defined as allowing unreasonable recordkeeping and administrative fees to be charged. Okay, fine. I understand that. But I guess I'm saying – so I know that you have an argument that we should vacate the judgment even on the claims that went to trial. But I'm saying – so let's assume that we don't do that. And so the question is what to do with the summary judgment claims. What is the theory if you accept the jury's verdict on the other claims where you advanced a theory of the unreasonableness of the fees that they rejected that you could then show that the same conduct nevertheless violated the prohibited transaction statute because the fees were unreasonable? All right. So I understand your question to be separate from the recordkeeping where there's been a finding that the fees were unreasonable. So the investment claim where there was no breach was found. That was not a substantive ruling by the jury that the fees themselves were reasonable on the investments. It was that no breach was found, and we take issue with that based on the instructions that – No, I understand. But I'm saying – so assuming that we don't agree with you that we should vacate that, and then the question is what to do with the summary judgment claims. My question is, is there a theory if we accept that we have a jury verdict and the jury rejected your argument that allowing unreasonable – that the fees were unreasonable and Yale, by agreeing to them, breached its fiduciary duty, if they reject that, how could you prevail on an argument that the fees were unreasonable if we accept that verdict? Well, I would say on the investment claims there was no finding that the fees themselves were reasonable. It was merely a finding that a breach had not been shown, a lack of care or skill. So you're saying it's conceivable that they rejected your argument just because there was a prudent process but didn't find that the fees were reasonable? Right. But you did argue to the jury that there was a breach of the fiduciary duty because the fees were unreasonable, right? That's count. Well –  Yeah, I think it was more along the lines of a failure to monitor or to negotiate over the shared classes. Okay. Can I ask also just about the right to a jury trial question? Sure. So we have to decide whether the claim is equitable, which everybody agrees that it is, right? The nature of the claim, equitable as a breach of trust, yes. Yes, okay. And so isn't it just – I mean the restatement of trusts tells me that the remedies of trust beneficiaries are equitable and enforceable against trustees and then tells me if a breach of trust causes a loss, including any failure to realize income, capital gain, or appreciation that would have resulted from proper administration, the beneficiaries are entitled to restitution and may have the trustee's surcharge, but they're not necessary to compensate fully for the consequences of the breach. So when there's a breach of trust by a fiduciary and you force the trustee to compensate the trust corpus by putting a charge against the fiduciary on the trust, that's just a classic equitable remedy, isn't it? Well, I would say that the text of 1109A doesn't follow trust law exactly. The case, Amara, that the defendant relies on is a claim under 1132A3, which does limit the relief to equitable remedies. But 1109A is broader. It talks about equitable or remedial relief and the restoration of loss. Okay, I understand. It's like not impossible that there might be a remedy that was not considered equitable in the 18th century, what we have to look to. My question is, isn't this remedy, saying that there was a breach of trust and therefore the trustee has to compensate the trust corpus, isn't that a remedy that was considered equitable? I would say under the— And it was available in the equity courts. Under Great West and the court's decision in Pereira, equitable relief being limited under ERISA to funds that were in the defendant's possession, that this is a compensatory remedy and a legal remedy. All right, thank you. We'll hear from Ms. Saharsky. Good morning. I'm Nicole Saharsky representing Yale. The plaintiffs had a chance to prove their claims at trial, and the jury rejected them. On appeal, they raised a variety of arguments, most of which weren't preserved below. None of them warrants the extraordinary remedy of a new trial here. Starting with the main argument that plaintiffs make, which is about the would versus could objection. There is no need to address that argument because, as discussed, their claim failed on the element of loss, and the verdict form is very clear that it is breach, loss, shifting the burden to the defendant. Ms. Saharsky, the jury instruction, I would suggest to you, was not clear on that because the judge instructed the jury on loss as an element, and in that section, in that section, which dealt with question 1B, not 1C, he gave this could have instruction on page 196 at the bottom. He told the jury the defendant can prove by preponderance of the evidence that no loss of the prime resulted from any failure to follow a prudent process, in which case this element has not been established, and that element that he's describing is loss. And he follows that up by saying even if a fiduciary failed to follow a prudent process in arriving at a decision, the fiduciary may not be found liable if a prudent fiduciary could have made the same decision anyway. So if that instruction is incorrect, it was embedded in the loss instruction as an element under 1B, which is why they might have come back with zero on 1B. So help me understand why if that instruction was not in the damages section because on page 197, the district court then says, okay, now let's turn to damages, and the could have instruction is not in the damages section. So what am I missing here? Why wasn't this instruction embedded in the loss element? It is discussing damages, and so if you look at what the court did here, and I'm also looking at page SA196, the court first addresses loss, and it discusses the plaintiff's burden on loss just starts on 195. It goes to 196, and it says the plaintiff has to prove an amount and then the amount of loss, that there has been a loss and then the amount, and then it moves to what the defendants can do. So it starts talking there.  The whole page 196 is all about the element of loss. It continues on page 378, I mean on page SA197, and then it says, and so here I've been talking about 1B with respect to claim 1. He's referring to the verdict sheet, 1B, and then he says, and that brings us to damages, which is in part 1C of the verdict form, and then he gives an instruction on damages that has nothing about the would or could have language. Respectfully, Your Honor, in that language he says he's talking about 1B and the special interrogatories, and special interrogatory 2A is the one that has the language about the would versus could, and if you look on page 196, I'm looking at starting on line 19, he is talking about the defendant's burden, the burden shifting to the defendants there. He's not talking about the plaintiff's burden anymore, and he's talking about how the defendants, the burden shifts to the defendants to prove that no loss to the plan resulted, and then he gives this would versus could instruction, and that's reflected on the verdict form. And that, it's true after that he says, okay, damages, and then he says more things about damages, but he was already talking about the burden shifting to the defendant. So how did the jury conclude, would you agree that loss is an element of the breach, that the plaintiff has to prove loss? Right, but the way that the court explained this in Sacerdoti is that the plaintiff has to make a showing on loss, and then the burden shifts to the defendant to disprove what the court called potential loss. I know, but to find a breach, they have to have found a loss, right, under this instruction, that you have to find a loss to find breach. Respectfully, no, that language about breach, plaintiffs did not, that's just stray language about breach that plaintiffs did not object to below. They did not object to that. They said that they wanted this language to go in a separate section. They wanted this language to go here, Your Honor, and they didn't. Is loss an element of the claim that the plaintiff has to prove? Yes. For breach. Breach and loss are separate elements. The verdict form made that clear. Plaintiffs did not object below, suggesting there was any problem with the verdict form not being clear between breach and loss. If they found that the plaintiff proved that there was a loss, how could the loss be zero? Because you can prove that there's an injury but fail to quantify it, and that's exactly what happened with the plaintiff's experts here. Their experts had pie-in-the-sky numbers that were not anything like services that were for Yale's plan, and the jury rejected those numbers. You can find that there's an injury but that there was a failure. But loss is, you're saying that loss doesn't actually mean loss? I mean, they were specifically instructed, was there a breach? I mean, the way the jury form was given to them, they're specifically asked separately, is there a loss? Correct. Yes. And then the amount of the loss is zero? This follows directly this court's decision in Sasserdote. Both the parties agreed about that below, and there was no objection on this basis. It's not a question. I mean, what I'm asking is I'm looking to this issue of why they would come to this kind of conclusion. Yes. They would say, be specifically asked, is there a loss from the breach? Yes. And then say, okay, what's the value of the loss? And say no. How do they get to that if they're not considering improperly damages or if they're not hung up on this could have, would have part of it? Just as a practical matter, how does this happen? Well, let me say first that they did not object to this below. After this verdict came back, they said nothing to the judge like, we think there's a problem with this verdict, this doesn't make sense. Even if there's no objection, if the instruction is not clear and it gives us reason to think that the jury wasn't getting this. Well, respectfully, it's plaintiff review, which this court is very loathe to use in the civil standard. But to answer your question directly, there are separate questions with respect to breach and loss that the court set out in Sasserdote. Breach asks whether there could have been a more prudent process. Is there some different process that plaintiffs should have, or that defendants should have followed? And the jury said yes on that. The loss question asks, if you did that other process, is there a better result that could have been achieved? And Sasserdote gives the example of that and says, then you have to say what the amount is. Like, what is the better result that you could have gotten? And Sasserdote uses an example of say that $100 in fees was not prudent and the plaintiff comes back and says, well, $10 in fees would be prudent. Then the burden shifts to the defendant to say some other amount could also be prudent in those circumstances. And so the verdict form, as the parties discussed it with the court, and this is an experienced trial judge who put this verdict form together and asked the parties many times for their objections, and plaintiffs did not object to this sequence on the verdict form, asked breach, loss, amount of loss, damages, and then had this special interrogatory about the would versus could. But they objected to the would versus could instruction. And if we find that that was error and that was embedded in the loss instruction, it's not an issue of like an inconsistent verdict. It's an issue of whether or not the error affected the verdict. That's the point, not whether it's inconsistent in some way. You're talking about the placement of the language. But if the language is wrong, they have a right to a new trial if the jury could have then reached the wrong conclusion based upon that instruction. Well, my submission is that the language isn't wrong. First of all, the could instruction is correct for the reasons that Judge Menasche gave and for the reasons of the Eleventh Circuit. I'm sorry, but just on the instruction itself, given that we do have cases that use the would language, even in those cases perhaps that was not what was at issue, what's your best answer for why could is okay? Not based on just sort of practical policy, but based either on law or the common law of trust or something. What's the reason that could is okay? Because under ERISA Section 1109, there can't be damages liability unless the imprudence caused resulting losses to the plan. And if the result is a prudent result, then there are no losses and no damages. There could be injunctive relief because there should have been a better process or removal of the trustee, but there can't be damages under those circumstances. And going back to the language that Your Honor cited. The premise of that is a prudent process could result in a range of decisions. Absolutely. That's why it has to be the could standard. Would makes no sense because, as you suggested, it assumes that there's only one prudent option, and that's just inconsistent with Sasserdoti's whole burden-shifting framework. I asked this during your opposing counsel's time, but why can't a jury consider the range of possible reasonable options determining whether or not there's, in fact, a breach? But if, in fact, they find a breach, then you switch to the wood language because the burden shifts to the defendant to show that the loss would have occurred anyway. It's not taking away this idea that there are a bunch of reasonable options that a fiduciary might take, but once there's a breach, then it's a different issue. I think it's important to look at the exact language in this would versus could question because it refers not to what the defendant would have done. It refers to what a reasonable prudent fiduciary could have done. If we're talking about what the defendant would have done, that's one person, and you can prove by a preponderance of evidence that they would have done a particular thing. But plaintiffs are the ones who proposed this language and said it should be a reasonably prudent fiduciary asking what that person would or could have done. And once you're talking about that person in the abstract, it does go back to that standard with a whole range of options. If we were to agree with you that the could language is correct, wouldn't that holding be inconsistent with Tatum, Roth, Tatum in the Fourth Circuit, Roth in the Eighth Circuit, Unisys in the Third Circuit, Busian in the Fifth Circuit, and Brotherson in the First Circuit? And, in fact, the government suggests in their brief that it would also be inconsistent with some of the language in our own case in Sasserdote where we used the would language and referenced the restatement in Third of Torts, which also, I think you would concede, uses the would language. There are only two cases of all of the ones that you've cited that address this question directly, Tatum and the Pizarro case in the Eleventh Circuit, which we sent a 28-J letter on. What is the restatement of trust, the third restatement? Doesn't that use the would language? It's talking about shifting the burden of proof and then it says the burden shifts to show what the defendant would have done. It does not talk about what a reasonable, prudent fiduciary would have done, and that's why I suggested to Your Honor that the language that refers to a reasonable, prudent fiduciary is very important because that's where the range of options comes in. So the restatement of trust does not use the would language. So you're saying the would language, it might be would, but it should be reasonable fiduciary and not, it should be, right? It should be reasonable fiduciary? In the special interrogatory that plaintiffs proposed, which asks about a reasonable, prudent fiduciary and what they would or could have done, then in those circumstances, because you're not talking about one person, but a range of options by reasonable, prudent fiduciary, it has to be clear and not would. It should be about whether a fiduciary could be considered prudent and still reach the same conclusion? Correct. So you're saying it might have been permissible for the district court to say Yale would have to show that it would have reached the same conclusion. Correct. Or if it's talking about a reasonable fiduciary in the abstract, it would have to say could because that would mean that there's a range of options. Absolutely. And the standard about whether Yale would have done the same thing, I don't know. That seems like it would be harder for the plaintiffs because Yale actually did one thing and maybe there was a lot of, it would be easier to show that it would have done the same thing because there was some basis for the decision it made in the first place. Right. Well, the defendants would have the burdens at that point, and we explained why in the particular circumstances of this case, the evidence shows that any error was harmless because Yale essentially only had the choice that it made with respect to record keeping fees.  So I get that. I get that point. But so what do we do with your point that the district court could have said either the defendant would have the burden to show that it would have done something different or a reasonable fiduciary could have done? Those seem like different standards. Is it really true the district court can choose between them? Well, the district court only addressed the could have reasonable prudent fiduciary standard because that was the one that was proposed by plaintiffs, and we said it should be could, they said it should be would, and that was the end of it. So the district court didn't make any suggestions about what any other instruction would say. So we're coming to the court. So you're saying at the very least, if the district court is instructing the jury about what a reasonably prudent fiduciary would, or the actions of a prudent fiduciary in the abstract, they should say could because that refers to a range. Right, and let me say that. But why wouldn't it? Why is it different? So why is it the same thing as saying if Yale had acted prudently, it would or could have reached the same conclusion? Like why is it different for like an abstraction as versus Yale when you are in both cases dealing with the counterfactual of a fiduciary acting prudently? Right. There was no argument or findings or anything on that below. The restatement of trust maybe could be read to suggest that it should be different in those circumstances, and that's the question that I was responding to. But in the only instruction that was before the court here, which addressed a reasonable prudent fiduciary, the answer is could, and I would point the court just to answer one of the last questions that was asked. The only courts that have directly addressed this question are the Fourth Circuit in Tatum and the Eleventh Circuit. Those other straight statements that plaintiffs cite were not about what happens after the burden shifts to the defendant and what the jury instruction should be. And you have to look at the context of the instruction here. Sorry. So can I ask about this instruction that we're focused on? So the district court says even if a fiduciary failed to follow a prudent process in arriving at a decision, the fiduciary may not be found liable if a prudent fiduciary could have made the same decision anyway. Do you think that is a correct statement? Yes. But then the district court says put another way, a fiduciary that does not conduct an adequate investigation breaches the duty of prudence only if an adequate investigation would compel the fiduciary to conclude that another course of action was required. Now that sentence is a mistake because whether you breach the duty of prudence is separate from whether the breach causes a loss, right? Yes. There is a stray right. So you agree that that is a mistake, and if we thought that that affected the jury's verdict, that might be a basis for vacating the judgment. But if the jury was persuaded by that, it would have found that there was no breach at all on count one, right, because they said that there was a breach even though there was no loss. You're right about that, and I would add that this is reviewed for plain air because plaintiffs didn't object to that. That language was in there, and plaintiffs didn't say, oh, my gosh, you have a stray reference to breach. It was because this language used to be in a breach section. Plaintiffs said it doesn't belong there. It belongs in talking about the defendant's burden. The district court said you're right about that. What should I do? Plaintiffs said move it to a separate section, put it here. And so the district court did what plaintiffs wanted, and they put it there but forgot to change this reference to breach. Can I ask you a different question? One of the other claims that didn't come up in their argument, but I'm curious what your response is. When the district court told the jury you may not find the defense liable for breach of the duty of prudence based solely on the absence of an IPS at some point during the class period, why isn't that incorrect? That is a correct statement of the law because ERISA's prudent standard depends on all of the facts and circumstances facing a reasonably prudent fiduciary. I know, but the judge told the jury that. The judge told them that there's not one particular mechanism you have to use, right? Right. So that was fine. That was correct. That was given to the jury. But then telling them that if they found, for example, that the absence of an IPS was unreasonable, that they couldn't find a breach solely based on that, I think that's incorrect. Explain why I'm wrong on that. Well, this is a curative instruction the judge decided to give. And it's reviewed for abuse of discretion. No, no, no. He gave the curative instruction earlier in the trial about the fact that the defendants had gotten, had put in an IPS, right? That was during the trial the judge gave that instruction, correct? The judge gave the instruction as part of the jury instructions. But it was separate. That issue was separate about the remedial steps taken by the defendant. I can read that charge to you. It was a separate charge. This one isn't referring to what the defendants did. Just if I could give some context. There's a long discussion of what it means to breach the duty of prudence. It starts with Section 1104, the court's discussion of how you look at all the facts and the circumstances. The court said in terms of subsequent remedial measures, I think the instruction you're referring to, that the fact that there were decreased record-keeping fees during the period does not mean that you should infer something because of that. Then the court went through more specifically what it means to breach the duty of prudence and gave the instructions about the IPS, et cetera, that we're talking about because it was concerned based on everything. It's an experienced trial judge who's hearing everything in the trial, was concerned that plaintiffs were making the argument that based solely on this one fact that there could be a fine of a breach. Put aside the issue that the defendants instituted that later. If a jury found that the failure to institute an IPS was unreasonable and therefore a breach, couldn't that be a basis for liability? If it were under all of the circumstances in the case, then the court explained that. You have to look at these breach instructions as a whole. But your position is that they can't decide that there's a breach solely because of the lack of IPS. That's exactly what the court said. If they determined that under the circumstances, given the way the investments were proceeding or something to that effect, instituting an IPS should have happened. It would not be making a determination solely on the lack of an IPS. That's exactly right. The court correctly told the jury that it had to consider all of the facts and circumstances, that it couldn't just make a finding of imprudence based solely on these particular things. That's a correct statement of the law, and it's reviewed otherwise for abusive discretion about whether this experienced trial judge under the circumstances decided that this was a breach. The jury trial issue, why doesn't Pereira instruct us that this is compensatory relief for which you get a jury trial? Because the court's more recent decision in the New York Psychiatric Association, which reflects the Supreme Court's decision in Amara, says that this is equitable relief. Amara makes clear, actually citing some of the sources that Judge Menasche mentioned, that there is a form of equitable relief when you seek remedy for breach of a trust against a trustee, breach of fiduciary duty, and what you're seeking is make whole relief, which is exactly what Section 1109 of ERISA authorizes. It's make whole relief where the money is returned to the plan. That's not money damages that a plaintiff is seeking to have paid to itself. It is in the nature of surcharge, which is an equitable remedy. The Supreme Court said that in Amara. So Pereira was overruled by what? By Amara's dicta? Is that what you're arguing? By New York State Psychiatric Association. What do you mean? We can't overrule a prior panel decision. Okay, well. We didn't even say we were doing that. Pereira addressed a little bit different situation. It wasn't make whole relief to an ERISA plan, so I think you can distinguish. Pereira was a breach, a claim for breach of a fiduciary duty, correct? Correct, but the damages sought were not make whole relief to an ERISA plan, and I think that's the key here. This is exactly what ERISA authorizes in Section 1109, and the Supreme Court said that.  So were the damages in Pereira? It was to have. It was a breach of fiduciary duty, but it was to, like, have the money paid back. It wasn't to, like, put it back in an ERISA plan. Paid back to whom? Paid back to the plaintiffs. Oh, I see, to the individual plaintiffs. So you're saying that in equity courts, the remedy of surcharge would put a charge on the trust corpus that would create an obligation of the trustee to the corpus, and maybe that's different from compensation paid directly to the plaintiffs. Is that your position? Right. The Pereira case did not consider this particular type of relief, which is to take the money that should have been in the plan, put it back in the plan, put whatever profit should have been, would have been earned, and then have that be the remedy. That is the particular remedy that's authorized under 1109 ERISA. That's the remedy that plaintiffs pleaded in their complaint. That's the remedy that they sought at trial. And that remedy— In the equity courts, isn't really any remedy sought against a trustee for breach of a fiduciary duty an equitable remedy? I don't think that you— Maybe not, only the ones that are available. So you're saying maybe the remedy in Pereira wouldn't have been available in the equity courts. Is that— Right. I don't think that this court addressed that in any great level of detail, but I think the Supreme Court's decision in Amara, which has a very considered explanation of this, including citing many sources from the restatement of trust and various treatises and cases and everything else, explains what this remedy was, the remedy of surcharge. This court in the New York Psychiatric Association decision recognized that Amara speaks to this question and then held as a matter of Second Circuit precedent that the remedy sought here is in fact an equitable remedy. Now there's a kind of cartoonish view of the distinction between law and equity, that law is whenever you're getting damages out of somebody's pocket and equity is whenever you're acting upon a particular fund, right? Correct. I mean, that's an oversimplification, but that's what people say. And so there's an intuition people have that because you're getting money out of the trustee's pocket, it must be a legal remedy. But in fact, the way surcharge worked is— the word surcharge is they put a charge on the trust corpus that creates a debt of the trustee to the corpus. So they were actually acting on a particular fund that was before the court, right? Well, I think it's two different lines of the Supreme Court's cases. The Great West line of cases is talking about basically forming a constructive trust to get at a particular pot of money. That wasn't a claim against a fiduciary. That was a claim for money that had been paid to a beneficiary that was trying to be got back. And then the Supreme Court has this separate thing, a separate type of equitable remedy that is discussed in Amara, which is this equitable remedy of surcharge where you basically put the money back into the trust, or in this case, the ERISA plan. So these are two different types of equitable remedies that sit side by side. Some people read the first one, Great West, as you suggested, to mean like this is the only type of equitable remedy available. But the Supreme Court's decision in Amara makes clear that that's not true, that in fact these are just two different kinds of equitable remedies. And we know—I mean this is not digging back into history today. If you get the remedy of surcharge against a trustee, it would be considered an equitable remedy, right? Correct. Okay. Can I ask the question that I asked to opposing counsel about the claims that were dismissed on summary judgment? So I asked, you know, since it's true that we said that to state a claim for a prohibited transaction you would need to make a showing that the services were unnecessary and the fees were unreasonable, and they did argue that the unreasonableness of the fees was part of their breach claim. But I guess opposing counsel said, well, even if the jury said that they didn't breach the duty of prudence, that could have just been based on the process leading up to the fees and isn't really a finding on the reasonableness of the fees, you know, period. Why isn't that correct? I think it can't be understood any other way. There was no daylight between these claims, the way that they were pleaded and the way that they were litigated at summary judgment. Plaintiffs said like it is— That seems correct. But isn't there a different standard that applies to proving one or the other? Well, there are different standards, but they come out to the same place. So on the breach of the duty of prudence, it's like was there a breach of the duty of prudence that caused losses to the plan, and their claim for the breach of the duty of prudence was unreasonable recordkeeping fees. The prohibited transaction asks was there a contract between the plan and a party in interest, namely a service provider, and then were those fees unnecessary? Were they necessary fees? Were they reasonable fees? And so both come down to there being whether the fees were reasonable or not, and here the jury rejected their claim that the fees were unreasonable when it found that there was no breach for claims 2 through 4. So we know that the jury rejected the theory that the fees were unreasonable. It is true that that's a theory that was presented to the jury, but couldn't the jury have found that there was no breach of the duty of prudence because whether the fees were reasonable or not, there was a prudent process that led to the decision? Well, I think the finding that there was no breach necessarily means that the fees were reasonable. You can't get to any kind of damages or any kind of outcome that the fees were unreasonable. Do you think it's equivalent to say fees that are the result of a prudent process are necessarily reasonable? I think that's the only way that you can read the jury's verdict in this case, and I think this is actually a more clear case.  I mean, we have these two different parts of ERISA. There's one about the duty of prudence, and you have to have a prudent process, and then there's the prohibition on prohibited transactions, and it says the services have to be necessary and the fees have to be reasonable. If you think that any fees that are the result of a prudent process are necessarily reasonable, doesn't that just kind of equate the two separate provisions? They are separate provisions, but the way that they were litigated in this case is that it was entirely the same theory. There was no daylight between the two of them, and I would submit that this is even a more clear case than Cunningham. So it's in Cunningham where the court announced what the correct rule was in the prohibited transaction case. That was on motion to dismiss, and because there was no pleading of unreasonable fees, the court affirmed as harmless error. This is an even more clear case of harmless error. Not only did plaintiffs not plead the thing that Cunningham said that they needed to plead, but they had a whole trial where they were allowed to try to make their case on this, a trial that took four weeks where the judge had hundreds of— But they did plead that the services were unnecessary because they said that the fees were duplicative where the recordkeeping services were duplicative, and they said that the fees were unreasonable, right? Well, they didn't plead those in the counts on prohibited transactions, just if you want to be technical about it. Yeah, but they just have to incorporate the other allegations or whatever. Okay, but the point is their theory is the same for prohibited transactions and for the imprudence. There is not daylight between them. At least insofar as the theories are the same for prohibited transactions and for the completion of duty, you could conclude that the jury would have reached the same result or could not reach a different result if the claims went back to them. But I'm just curious what your answer is in the abstract. Is it true that under the prohibited transaction provision, any fees that are the result of a prudent process are necessarily reasonable fees? I think it would depend on the case, and of course the prohibited transaction statutes, 1106 and 1108, address many things other than just unreasonable fees. There's a whole bunch of things that are exempted. All right, I think we've covered this. In Section 1108. All right, thanks. We'll hear from Mr. Sawyers, two minutes on the bottom. Just to touch on the factual context of Carrera, the damages there were not going to individual plaintiffs. I believe it was a claim on behalf of a corporation for breach of fiduciary duty, and in that sense it is similar to restoring money to a retirement plan. And in Amara, the remedies there were clearly equitable in that any relief required on reforming the pension plan, changing the terms of the plan, and then allowing monetary relief to flow from there. As far as the instruction— Well, just as a general matter, so if today I sue a trustee for breach of fiduciary duty and it turns out that I can prove that his breach caused a loss, I can get a remedy of surcharge where he has to compensate the trust corpus for the loss, right? You're suggesting under some state common law, something like that? Just normal trust law. I would think that's right. Okay, and so since we have to look to see whether this is the kind of remedy that would be available in equity, and you've just told me that surcharge is available in equity to have the trustee compensate the trust, why isn't this that? Well, I'd go back to the decisions in Gray, Wess, and Pereira, which say that equity is narrowly confined and— Narrowly confined to what? To funds that are in the defendant's possession. But you just told me that it is true that in equity I can get the remedy of requiring the trustee to compensate the trust for his breach of the fiduciary duty. So those were not funds in his possession. It's a loss he caused to the trust, and an equity court can require him to compensate the trust. Well, I'm suggesting that ERISA does not follow trust law 100 percent of the time, and this is an instance where there's a departure. Yeah, no, but I'm asking you why it's a departure. It seems to me it's the same, and I'm just kind of asking you to explain why it's different. The language in 1109, not being limited to equitable remedies and allowing for recovery of losses to the plan. Okay. All right, the time's up. Thank you. Do I not have 19 seconds? Okay, never mind. Thanks. We'll reserve decision and appreciate the arguments. Have a good day.